**[ORAL ARGUMENT HELD DECEMBER 7, 2020]**
**Nos. 22-5069, 22-7030, 22-7031**

---

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

JAMES BLASSINGAME AND SIDNEY HEMBY

Appellees,

v.

DONALD J. TRUMP

Appellant,

REPRESENTATIVE ERIC SWALWELL

Appellee,

v.

DONALD J. TRUMP, et al

Appellants,

HON. BENNIE G. THOMPSON, et al.

Appellees,

v.

DONALD J. TRUMP, et al.

Appellants.

**SUPPLEMENTAL BRIEF OF APPELLEES**

Donald B. Verrilli, Jr. (Bar No. 420434)
Ginger D. Anders (Bar No. 494471)
Elaine J. Goldenberg (Bar No. 478383)
Sarah E. Weiner (Bar No. 90005758)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW
  Suite 500E
Washington, DC 20001
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300
donald.verrilli@mto.com
ginger.anders@mto.com
elaine.goldenberg@mto.com
sarah.weiner@mto.com

*Attorneys for Appellee Hon. Barbara Lee*

Joseph M. Sellers (Bar No. 318410)
Brian Corman (Bar No. 1008635)
Alison S. Deich (Bar No. 1572878)
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Avenue, NW
  Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
jsellers@cohenmilstein.com
bcorman@cohenmilstein.com
adeich@cohenmilstein.com

Robert B. McDuff
MISSISSIPPI CENTER FOR
JUSTICE
767 North Congress Street
Jackson, MS 39202
Telephone: (601) 259-8484

Janette McCarthy-Wallace
  (Bar No. OH066257)
Anthony P. Ashton (Bar No. MD25220)
Anna Kathryn Barnes (Bar No. 63609)
NAACP
Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
Telephone: (410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Attorneys for Appellees Bass Plaintiffs\**

Philip Andonian (Bar No. 63669)
Joseph Caleb (D.C. Bar No. 495383)
CALEBANDONIAN PLLC
1100 H Street, NW, Ste. 315
Washington, DC 20005
Telephone: (202) 953-9850
phil@calebandonian.com
joe@calebandonian.com

Matthew Kaiser (Bar No. 5303)
Sarah R. Fink (Bar No. 63849)
KAISERDILLON PLLC
1099 Fourteenth Street, NW, 8th Fl.West
Washington, DC 20005
Telephone: (202) 640-2850
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com

*Attorneys for Appellee Eric Swalwell*

Patrick A. Malone (Bar No. 397142)
Daniel Scialpi (Bar No. 997556)
Heather J. Kelly (Bar No. 453154)
PATRICK MALONE &
ASSOCIATES, P.C.
1310 L Street, NW, Suite 800
Washington, DC 20005
Telephone: (202) 742-1500
Facsimile: (202) 742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com
hkelly@patrickmalonelaw.com

Cameron Kistler (Bar No. 62145)
Kristy Parker (Bar No. 63922)
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Ave. NW, #163
Washington, DC 20006
Telephone: (202) 579-4582
cameron.kistler@protectdemocracy.org
kristy.parker@protectdemocracy.org

John Paredes
UNITED TO PROTECT
DEMOCRACY
115 Broadway, 5th Floor
New York, NY 10006
Telephone: (202) 579-4582
john.paredes@protectdemocracy.org

Genevieve C. Nadeau (Bar No. 63685)
Benjamin L. Berwick (Bar No. 62300)
UNITED TO PROTECT DEMOCRACY
15 Main St., Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
genevieve.nadeau@protectdemocracy.org
benjamin.berwick@protectdemocracy.org

*Attorneys for Appellees James Blassingame and Sidney Hemby*

*After Congressman Thompson withdrew from this action, the district court referred to the remaining Plaintiffs as the "Bass Plaintiffs." JA 214-15.

## **TABLE OF CONTENTS**

I.    The United States Is Correct That A President Cannot Claim Immunity For Incitement Of Imminent Private Violence. ....................................................1

II.   Granting Presidential Immunity Would Be Inappropriate Even Absent Allegations That President Trump Incited Imminent Private Violence. .........8

    A.    Presidential speech on a matter of public concern may fall beyond the outer perimeter of a president's official responsibilities even if that speech does not incite imminent private violence. ...............................8

    B.    The United States' proposed test does not address the complaints' allegations that former President Trump took actions that did not directly involve speech to the public on matter of public concern. ....12

CONCLUSION ........................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Clinton v. Jones*,
   520 U.S. 681 (1997)................................................................3, 4, 6, 11

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982)................................................................2, 3, 4, 9

*Whitney v. California*,
   274 U.S. 357 (1927)................................................................8

Plaintiffs-Appellees ("Plaintiffs") respectfully submit this supplemental brief in response to the brief filed by the U.S. Department of Justice on behalf of the Executive Branch ("the United States").  Plaintiffs agree with the United States that this Court should reject former President Trump's categorical claim of presidential immunity for all presidential speech on matters of public concern and that the former President cannot claim immunity for his incitement of imminent private violence on January 6, 2021.  For the reasons explained below, however, Plaintiffs urge this Court not to resolve the immunity question solely on the extremely narrow grounds advanced by the United States.  Although it is understandable that the Executive Branch would advance a sweeping definition of presidential immunity, the position of the United States is inadequate in two respects.  First, it does not fully align with the presidential immunity principles set forth by the Supreme Court.  Second, it does not provide a basis for resolving the immunity question with respect to the full range of conduct by former President Trump that is before the Court.

## I.     The United States Is Correct That A President Cannot Claim Immunity For Incitement Of Imminent Private Violence.

1.  The United States urges this Court to resolve this appeal by "rejecting the former President's categorical position and holding that a President's speech on a matter of public concern is not protected by absolute immunity if it constitutes incitement to imminent private violence."  U.S. Br. 21.  In doing so, the United States makes a number of plainly correct statements that bear upon the proper resolution of

1

the immunity issue before this Court.  For example, the United States is correct that, "although courts should be reluctant to conclude that a suit against the President is based on conduct that lies beyond the outer perimeter of his Office, . . . a meaningful perimeter exists."  *Id*. at 2.  The United States is also correct that *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), does not set forth "a rule of absolute immunity for the President regardless of the nature of his acts."  U.S. Br. 2.  And the United States is correct that the "single, categorical argument" that former President Trump has pressed on appeal—that a "President is always immune from any civil suits based on his 'speech on matters of public concern,'" *id*. at 3 (quoting Trump Br. 7)—would unjustifiably expand presidential immunity to encompass behavior that bears no relation to a president's "discharge of his official duties," *Nixon*, 457 U.S. at 752 n.32.  Most importantly, the United States is correct that a president cannot claim that incitement of imminent private violence should be immune from civil liability.[1]

2.  Although correct so far as it goes, the position of the United States does not go far enough.  The United States treats as self-evident the conclusion that "[n]o part of a President's official responsibilities includes the incitement of imminent private violence," and asserts that "[b]y definition such conduct plainly falls outside

---

[1] The parties fully litigated the plausibility of the incitement allegations below in the context of former President Trump's claimed First Amendment defense.  Applying the same standard that the United States now proposes should govern former President Trump's claim of presidential immunity, the district court found Plaintiffs' allegations of incitement plausible.  *See* JA293-99.

the President's constitutional and statutory duties." U.S. Br. 16. But the *reason* those points are so plainly correct is rooted in the separation-of-powers analysis the Supreme Court prescribed in *Nixon* and in *Clinton v. Jones*, 520 U.S. 681 (1997). Those decisions instruct that the outer perimeter of immune presidential activity is determined by reference to a president's official responsibilities, as the point of immunity is to ensure that presidents can discharge those responsibilities undeterred by the risk of civil liability. *See Nixon*, 457 U.S. at 755 (stating that "the sphere of protected action" must "be related closely to the immunity's justifying purposes"). Those official responsibilities are, in turn, defined by the Constitution and federal statutes. Thus, the grant of immunity in *Nixon* was predicated on the president's exercise of "*constitutional and statutory authority* to prescribe the manner in which the Secretary will conduct the business of the Air Force." *Id.* at 757 (emphasis added). And the denial of immunity in *Clinton* was predicated on the absence of any connection between the challenged conduct and the exercise of any constitutional or statutory authority of the presidency. 520 U.S. at 694.

3. Plaintiffs acknowledge the United States' point that as a matter of history, if not constitutional or statutory authority, a president will inevitably speak on a wide range of matters of public concern. *See* U.S. Br. 12. Plaintiffs likewise acknowledge that such speech can address matters as to which the president bears no constitutional or statutory responsibility. *See id*. And Plaintiffs recognize that the Executive

Branch has a powerful interest in an expansive definition of presidential immunity. *See id*. at 3.

But those considerations do not justify adopting the most extreme version of the United States' position, *see id*. at 15, which could be understood to immunize almost all presidential speech on matters of public concern irrespective of its connection to the "particular functions of [the] office," *Clinton*, 520 U.S. at 694. Adopting the United States' apparent view that the scope of a president's official responsibilities includes virtually all presidential public communications would expand immunity substantially beyond the outer perimeter defined in *Nixon* and *Clinton*—and would replace the standard articulated by the Supreme Court with an amorphous, malleable appeal to the ever-evolving traditions of the presidency. Neither *Nixon* nor *Clinton* suggests that presidential actions not involving any exercise of the president's "constitutional and statutory authority," *Nixon*, 457 U.S. at 757, should be immune from civil liability. To be sure, much presidential speech on matters of public concern will bear a connection to the president's constitutional and statutory responsibilities, and thus will be encompassed within the definition of immunity set forth in *Nixon* and *Clinton*. But a blanket presumption of immunity for virtually all presidential speech on matters of public concern is unwarranted, and this Court should not adopt one here. There is no reason to think—and, as in *Clinton*, the Executive Branch has not made a persuasive showing—that such sweeping

4

immunity is necessary to ensure that a president can discharge the responsibilities of the office effectively. *See infra* p. 10-11.

4. Plaintiffs agree that this Court need not articulate a comprehensive test for determining when presidential speech on matters of public concern is immune from civil liability. But Plaintiffs do not think that it suffices merely to conclude that "[n]o part of a President's official responsibilities includes the incitement of imminent private violence," and leave it at that. U.S. Br. 16. Former President Trump's speech on January 6 addressed a matter of public concern: the certification of a presidential election. Because the United States argues that "vast" amounts of presidential speech on matters of public concern would likely fall within the outer perimeter of the responsibilities of the office, *id*. at 15, there must be a reason why Trump's speech—and incitement of violence by a president more generally—falls beyond that perimeter (though the United States does not provide one). In Plaintiffs' judgment, that rationale is necessarily grounded in the conjunction of two fundamental points that Plaintiffs have advanced: (1) the conduct of former President Trump at issue in this case, including the January 6 speech, lacked any connection to the constitutional or statutory responsibilities of the presidency; (2) and it constituted an effort to prevent Congress from carrying out a constitutional responsibility (certification of the presidential election) from which the Constitution excludes the sitting president. Whether either of those two considerations alone

would justify denying immunity, their combined presence here makes clear that immunity is unwarranted.

In some respects, the United States appears to acknowledge the force of that rationale. For example, the government's focus on "private" violence recognizes that the actions at issue do not involve any invocation of or use by former President Trump of any power of the Executive Branch, and thus do not involve any exercise of a constitutional or statutory authority of the presidency. The United States thus appears to agree that the present case is unlike *Nixon* in that the complaint does not allege that the president unlawfully exercised authority he otherwise possesses. Because no exercise of a presidential power is at issue here, allowing Plaintiffs' claims to go forward poses no risk of chilling presidential "acts in performance of particular functions of [the] office." *Clinton*, 520 U.S. at 694.

But the United States appears to disagree with Plaintiffs about the relevance of the fact that former President Trump sought to obstruct the exercise of a constitutional responsibility exclusively assigned to Congress. That disagreement—which is based on an apparent misunderstanding of Plaintiffs' argument—is misplaced. Plaintiffs do not contend that "any conduct by the President concerning the certification of presidential election results necessarily falls outside the immunity recognized in *Nixon*" because it concerns "functions that the Constitution assigns exclusively to another Branch." U.S. Br. 10. The United States is surely correct that

6

the Constitution's separation of powers rests on the assumption that "the Branches will check each other," *id*., and that a president will inevitably seek to persuade Congress and the Judiciary to exercise their constitutional powers in his preferred manner, including by seeking to persuade the public.

But what is at issue here is *obstruction*, not persuasion. Former President Trump directed his followers to prevent Congress from carrying out its constitutional duty to certify the 2020 presidential election. When the Constitution assigns a particular function—like certifying presidential election results—exclusively to Congress and not the president, obstructing that function necessarily falls outside the outer perimeter of the president's constitutional authority. No separation-of-powers values would be threatened by denying immunity to such conduct. To the contrary, subjecting former President Trump to suit for his conduct advances the separation of powers by making clear to future presidents that they can be held accountable for conspiring to prevent Congress from carrying out its constitutional responsibility to certify the results of a presidential election—a responsibility that is essential to our Constitution's system of governance and to the peaceful transfer of power.

For those reasons, although Plaintiffs welcome the United States' conclusion that the district court's decision should be affirmed, Plaintiffs urge this Court to ground that conclusion in the principles Plaintiffs have advanced rather than solely on the United States' narrower rationale.

**II.    Granting Presidential Immunity Would Be Inappropriate Even Absent Allegations That President Trump Incited Imminent Private Violence.**

For two additional reasons, the United States' proposed immunity test is insufficient to fully resolve the issues before this Court.  First, there is no evident reason why Plaintiffs should have to demonstrate a threat of "imminent" or "violent" action to defeat former President Trump's claim of immunity.  Neither of those requirements, which are drawn from the First Amendment's "clear and present danger" test, properly bear on whether former President Trump's actions fall within the outer perimeter of presidential responsibility.  Second, former President Trump's alleged misconduct involved some conduct *other than* speech to the public.

**A.    Presidential speech on a matter of public concern may fall beyond the outer perimeter of a president's official responsibilities even if that speech does not incite imminent private violence.**

1.  As an initial matter, there is no evident reason why the "imminence" requirement of the First Amendment "clear and present danger" test should be imported into the very different context of presidential immunity.  The imminence requirement in First Amendment law reflects the idea that because counter-speech, rather than government intervention, is the preferred response to speech urging an audience to take unlawful or disruptive action, the government should yield if there is sufficient time for counter-speech to occur.  *See, e.g.*, *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring).  But that rationale has no bearing on presidential immunity.  A president who calmly instructs his followers on

8

December 15 to gather at the U.S. Capitol on January 6 to deploy violence to obstruct Congress's certification of electoral results is acting just as far beyond the outer perimeter of a president's "official responsibility," *Nixon*, 457 U.S. at 756, as a president who exhorts an excited crowd to do the same thing on the morning of January 6 itself.  The reason such speech—on any date—lies beyond the outer perimeter of presidential responsibility has nothing to do with whether counter-speech might persuade the president's followers to stand down.  Such presidential speech has no claim to immunity because a president has no business instructing his supporters at any time to obstruct Congress's efforts to fulfill its certification responsibilities.

By the same token, there is no evident reason why a president who exhorts his followers to obstruct Congress's certification of a presidential election is acting within the outer limits of his "official responsibility" so long as the obstructive action does not involve private violence.  A president's exhortation to a crowd of followers to block all roadways to the Capitol on January 6 or forge electoral college ballots could prevent Congress from carrying out its constitutional responsibilities, even absent any violent action on the part of those followers.  But an exhortation of that kind bears no more connection to a president's official responsibilities than does a president's exhortation to use violence to accomplish the same end.  Urging private citizens to use any means that obstruct Congress from carrying out its constitutional

9

duty to certify a presidential election—a procedure the Framers expressly placed beyond presidential reach—bears no connection to any presidential responsibility.

The lack of any connection to a president's constitutional or statutory responsibilities and the obstruction of Congress's exclusive, constitutionally assigned duty are the reasons why a president would not be entitled to immunity for such speech. And those reasons are present whether or not the action urged by the president involves violence.

2. The United States suggests that borrowing the First Amendment incitement standard is necessary to guard against an undue "chill [of] legitimate presidential communication" and civil "suits that would be burdensome and intrusive even if they ultimately proved meritless." U.S. Br. 17. That contention is unpersuasive.

It is certainly true that "Presidents routinely address controversial issues that are the subject of passionate feelings" and that "Presidents may at times use strong rhetoric" that prompts listeners to "overreact, or even respond with violence." U.S. Br. 17. For those and other reasons discussed above, Plaintiffs agree that this Court should not attempt to articulate a single, universally applicable standard for determining when presidential speech on a matter of public concern is or is not immune.

But those considerations do not justify the use of the First Amendment incitement standard to define the boundaries of presidential authority. It is difficult

to imagine what realistic risk of chilling any appropriate function of the presidency would result from a ruling that a president does not enjoy immunity for urging private citizens to take actions (violent or not, imminent or not) that obstruct Congress from certifying a presidential election. The prospect that civil suits might prove burdensome even if ultimately unmeritorious—which appears to be at the core of the United States' concern—does not itself justify immunity, as the Supreme Court unanimously held in *Clinton*. *See* 520 U.S. at 708-09 ("Most frivolous and vexatious litigation is terminated at the pleading stage or on summary judgment, with little if any personal involvement by the defendant. Moreover, the availability of sanctions provides a significant deterrent to litigation directed at the President in his unofficial capacity for purposes of political gain or harassment. History indicates that the likelihood that a significant number of such cases will be filed is remote.").

The purpose of immunity is to ensure that the responsibilities of the office can be discharged effectively, not to protect the person who holds the office from any threat of liability. *See Clinton*, 520 U.S. at 708-09. The United States simply has not advanced a persuasive case for drawing the immunity line at incitement of imminent private violence.

**B.    The United States' proposed test does not address the complaints'
allegations that former President Trump took actions that did not
directly involve speech to the public on matter of public concern.**

The United States' approach is insufficient for another reason.  Plaintiffs'
allegations against former President Trump involve some conduct other than speech
to the public on matters of public concern.  *See, e.g.*, JA153, JA159.  For example,
the complaints allege that former President Trump conspired with the Proud Boys,
the Oath Keepers, and other extremist groups to prevent Congress from certifying
presidential election results.  *See* JA155-57.

Even if one were to agree with the United States' overbroad position that most
presidential speech on matters of public concern should, based on historical practice,
be deemed within the outer perimeter of presidential responsibility, *see* U.S. Br. 16,
conspiratorial activity with private actors of the kind alleged in the complaint goes
well beyond speech to the public.  In a similar vein, the allegations that former
President Trump and his campaign organized and paid for the event that occurred on
the morning of January 6 do not involve communications to the public.  *See* JA159.
None of those additional actions has any connection to a president's constitutional
or statutory responsibilities, or even to a president's historical communicator-in-
chief role.  And those actions raise the same separation-of-powers concerns about
obstructing Congress from fulfilling its constitutional duty to certify the results of

the 2020 presidential election as does former President Trump's speech to an

agitated crowd on January 6.

## CONCLUSION

The district court's immunity decision should be affirmed.

Dated:  March 23, 2023                         Respectfully submitted,

<div style="margin-left: 40%;">

/s/ *Donald B. Verrilli, Jr.*
_____
Donald B. Verrilli, Jr. (Bar No. 420434)
Ginger D. Anders (Bar No. 494471)
Elaine J. Goldenberg (Bar No. 478383)
Sarah E. Weiner (Bar No. 90005758)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW
  Suite 500E
Washington, DC 20001
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300
donald.verrilli@mto.com
ginger.anders@mto.com
elaine.goldenberg@mto.com
sarah.weiner@mto.com

*Attorneys for Appellee Hon. Barbara Lee*

</div>

13

Joseph M. Sellers (Bar No. 318410)
Brian Corman (Bar No. 1008635)
Alison S. Deich (Bar No. 1572878)
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Avenue, NW
  Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
jsellers@cohenmilstein.com
bcorman@cohenmilstein.com
adeich@cohenmilstein.com

Robert B. McDuff
MISSISSIPPI CENTER FOR
JUSTICE
767 North Congress Street
Jackson, MS 39202
Telephone: (601) 259-8484

Janette McCarthy-Wallace
  (Bar No. OH066257)
Anthony P. Ashton (Bar No. MD25220)
Anna Kathryn Barnes (Bar No. 63609)
NAACP
Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
Telephone: (410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Attorneys for Appellees Bass Plaintiffs\**

Philip Andonian (Bar No. 63669)
Joseph Caleb (D.C. Bar No. 495383)
CALEBANDONIAN PLLC
1100 H Street, NW, Ste. 315
Washington, DC 20005
Telephone: (202) 953-9850
phil@calebandonian.com
joe@calebandonian.com

Matthew Kaiser (Bar No. 5303)
Sarah R. Fink (Bar No. 63849)
KAISERDILLON PLLC
1099 Fourteenth Street, NW, 8th Fl.West
Washington, DC 20005
Telephone: (202) 640-2850
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com

*Attorneys for Appellee Eric Swalwell*

14

Patrick A. Malone (Bar No. 397142)
Daniel Scialpi (Bar No. 997556)
Heather J. Kelly (Bar No. 453154)
PATRICK MALONE &
ASSOCIATES, P.C.
1310 L Street, NW, Suite 800
Washington, DC 20005
Telephone: (202) 742-1500
Facsimile: (202) 742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com
hkelly@patrickmalonelaw.com

Cameron Kistler (Bar No. 62145)
Kristy Parker (Bar No. 63922)
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Ave. NW, #163
Washington, DC 20006
Telephone: (202) 579-4582
cameron.kistler@protectdemocracy.org
kristy.parker@protectdemocracy.org

John Paredes
UNITED TO PROTECT
DEMOCRACY
115 Broadway, 5th Floor
New York, NY 10006
Telephone: (202) 579-4582
john.paredes@protectdemocracy.org

Genevieve C. Nadeau (Bar No. 63685)
Benjamin L. Berwick (Bar No. 62300)
UNITED TO PROTECT DEMOCRACY
15 Main St., Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
genevieve.nadeau@protectdemocracy.org
benjamin.berwick@protectdemocracy.org

*Attorneys for Appellees James Blassingame and Sidney Hemby*

15

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify as follows:

1. This brief complies with the Court's December 20, 2022 Order because it contains 2,941 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii);

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman font.

Dated:  March 23, 2023                    */s/ Donald B. Verrilli, Jr.*
                                          Donald B. Verrilli, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.