**ORAL ARGUMENT HELD DECEMBER 7, 2022**
**No. 22-5069**
**(Consolidated with 22-7030, 22-7031)**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

JAMES BLASSINGAME AND SIDNEY HEMBY,

*Appellees*,

v.

DONALD J. TRUMP,

*Appellant.*

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**BRIEF FOR APPELLANT DONALD J. TRUMP IN RESPONSE TO
THE UNITED STATES AS AMICUS CURIAE**

———————————

David A. Warrington
Jonathan M. Shaw
Gary M. Lawkowski
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 402
Alexandria, Virginia 22314
Tel: (703) 574-1206
Fax: (415) 520-6593
dwarrington@dhillonlaw.com
jshaw@dhllonlaw.com
glawkowski@dhillonlaw.com

Jesse R. Binnall
 *Counsel of Record*
Molly McCann
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
molly@binnall.com

**COUNSEL FOR PRESIDENT DONALD J. TRUMP**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................i

TABLE OF AUTHORITIES .......................................................ii

INTRODUCTION...................................................................1

ARGUMENT ........................................................................2

    I.     DOJ Endorses a Broad View of Presidential Immunity ........2

    II.    The DOJ'S Proposed Test is Irreconcilable with *Nixon* .........3

    III.   There is No Need to Remand this Case to the
          District Court .......................................................6

    IV.   President Trump's Speech Is Protected
          Under *Brandenburg*...............................................8

CONCLUSION ....................................................................13

CERTIFICATE OF COMPLIANCE ........................................15

CERTIFICATE OF FILING AND SERVICE ...........................16

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. al-Kidd*,

    563 U.S. 731, 741 (2011) ........................................................................ 14

*Bible Believers v. Wayne Cty.*,

    805 F.3d 228, 246 (6th Cir. 2015) (en banc) .......................................... 9

*Blassingame v. Trump*,

    Case No. 22-5069 (D.C. Cir. Dec. 7, 2022) ............................................ 13

*Bose Corp. v. Consumers Union of United States, Inc.*,

    466 U.S. 485, 503 (1984) ......................................................................... 7

*Brandenburg v. Ohio*,

    395 U.S. 444 (1969) ................................................................................. 1

*Connick v. Myers*,

    461 U.S. 138, 145 (1983) ......................................................................... 8

*Easley v. Cromartie*,

    532 U.S. 234, 257 (2001) ......................................................................... 7

*Fed. Election Comm'n v. Wisc. Right to Life*,

    551 U.S. 449, 474 (2007) ......................................................................... 8

*Harlow v. Fitzgerald,*

　457 U.S. 800, 818 (1982) ........................................................................ 14

*Hess v. Indiana,*

　414 U.S. 105, 107 (1973) ........................................................................ 10

*Imbler v. Pachtman,*

　424 U.S. 409 (1976) ................................................................................. 3

*Nixon v. Fitzgerald,*

　457 U.S. 731 (1982) ......................................................................... 3, 4, 5

*Nwanguma v. Trump,*

　903 F.3d 604, 609 (6th Cir. 2018) ...................................................... 9, 10

*Pearson v. Callahan,*

　555 U.S. 223, 231, (2009) ...................................................................... 14

*Pierson v. Ray,*

　386 U.S. 547, 554 (1967) ......................................................................... 4

*Rankin v. McPherson,*

　483 U.S. 378, 387 (1987) ......................................................................... 8

*Snyder v. Phelps,*

　562 U.S. 443, 452 (2011) ......................................................................... 8

*Thompson v. Trump,*

    590 F. Supp. 3d 46, 113 (D.D.C. 2022) ................................. 6, 7, 9, 10, 12

*U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC,*

    583 U.S. __, 138 S. Ct. 960, 967 n. 4 (2018) ............................................. 7

**INTRODUCTION**

The Department of Justice ("DOJ") largely rejects Appellees' position and endorses a broad understanding of Presidential immunity from civil suit. Nevertheless, DOJ proposes an unprecedented specific carve out for speech that incites imminent private violence, DOJ Brief at 2, and suggests that this Court remand to the District Court to determine whether President Trump's speech qualifies as "incitement" under *Brandenburg v. Ohio*, 395 U.S. 444 (1969) and its progeny.  This is neither consonant with binding Supreme Court authority nor necessary.

First, President Trump's speech falls well within the broad scope of absolute immunity suggested by DOJ.

Second, DOJ's argument for importing the *Brandenburg* standard into absolute immunity defeats the purpose of having absolute immunity.  Absolute immunity aims to prevent the President from being subjected to *the process* of civil litigation.  It recognizes that the President is a prominent national figure and constant target for litigation.  The very concept of Presidential immunity assumes some level of conduct that is wrongful yet beyond the reach of civil liability.  Collapsing the standard for Presidential immunity into the standard for protected First Amendment activity effectively ignores these purposes; it throws open the doors for civil claims against a President and creates a stricter standard for a President than for ordinary

1

federal officials, who have successfully claimed qualified immunity on far more egregious facts.

Third, President Trump's speech is protected speech under the *Brandenburg* test. *Brandenburg* emphasizes the importance of looking at the actual words of a purportedly inciting statement. That speech is before the Court. President Trump never instructed the crowd to engage in unlawful activity. To the contrary, he explicitly stated that supporters would "soon be marching over to the Capitol to *peacefully* and patriotically make your voices heard." Even if DOJ's standard were correct—and it is not—there would be no need to remand this case: this Court should find on the record before it that President Trump's speech is protected under *Brandenburg*.

## ARGUMENT

### I.   DOJ Endorses a Broad View of Presidential Immunity

DOJ correctly endorses a broad view of Presidential immunity. It recognized that "[t]he traditional 'bully pulpit' of the Presidency" falls within the scope of absolute immunity. *See* DOJ Brief at 12; *Id.* at 15. Moreover, the President's use of the bully pulpit "is not limited to speech concerning matters for which the President himself bears constitutional or statutory responsibility;" it includes "matters over which the Executive Branch—or the federal government as a whole—

2

has no direct control," *id.* at 12, including matters constitutionally committed to another branch of government, such as Congress.

DOJ recognized that the line between "official" and "campaign" activities, particularly with respect to speech addressing matters of public concern, is vanishingly thin. Therefore, Presidential immunity is broader than even Congressional immunity under the Westfall Act, *id.* at 14 n.3, and "conduct occurring in the context of a political campaign" may fall within the scope of Presidential immunity. *Id.* at 12.

Finally, DOJ recognized that a claim based on a *failure* to take an official action is foreclosed by Presidential immunity. DOJ Brief at 15.

## II.     The DOJ'S Proposed Test is Irreconcilable with *Nixon*

DOJ's proposed carveout from presidential immunity for speech on matters of public concern that might "plausibly" be alleged to have tipped over into incitement due to contextual factors (*i.e.*, despite its plain language) is irreconcilable with *Nixon v. Fitzgerald*, 457 U.S. 731 (1982).

The *Nixon* Court analogized presidential immunity to prosecutorial immunity, which itself was based on an analogy to judicial immunity. *See Imbler v. Pachtman*, 424 U.S. 409 (1976). As the Court noted, the President "must concern himself with matters likely to 'arouse the most intense feelings.'" *Nixon*, 457 U.S. at 752 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Moreover, "[i]n view of the visibility of

3

his office and the effect of his actions on countless people, the President would be an easily identifiable target for suits for civil damages." *Nixon*, 457 U.S. at 753. An awareness of "this personal vulnerability frequently could distract a President from his public duties, to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." *Id*. Thus, Presidential immunity is premised on the idea that the President is a prominent target for allegations of wrongdoing, and that fear of such allegations is likely to "distract" the President, even if he is ultimately vindicated.

At its core, DOJ's argument is that "plausibly" illegal or unprotected conduct is outside the scope of Presidential immunity. DOJ argues that "[n]o part of a President's official responsibilities includes incitement of imminent private violence," therefore "[b]y definition, such conduct plainly falls outside the President's constitutional statutory duties." DOJ Brief at 16.

DOJ's argument misses the point of absolute immunity. Immunity matters only if *a President is alleged to have done something wrong*. After all, if a plaintiff does not have an at least arguable claim that a President acted wrongfully, a civil suit would either not be brought or would be promptly disposed of on a motion to dismiss under Rule 12(b)(6) irrespective of presidential immunity.

Dispositively, the Court in *Nixon* rejected a remarkably similar argument. In *Nixon*, the Respondent claimed that he was illegally dismissed in retaliation for his

4

testimony to Congress. *Nixon*, 457 U.S. at 736. More specifically, he argued that unlawful conduct, by virtue of being unlawful, cannot fall within the scope of the President's official duties and therefore is beyond the scope of presidential immunity. *Id.* at 756. Because a statute protected federal employees, he argued that any violation of that statute could not be within the scope of the President's responsibilities. *Id.* ("Because Congress has granted this legislative protection, respondent argues, no federal official could, within the outer perimeter of his duties of office, cause Fitzgerald to be dismissed without satisfying this standard in prescribed statutory proceedings.").

The Court firmly rejected this approach. "Adoption of this construction… would deprive absolute immunity of its intended effect" because it "would subject the President to trial on virtually every allegation that an action was unlawful, or was taken for a forbidden purpose." *Nixon*, 457 U.S. at 756.

Here, DOJ attempts to distinguish this case from *Nixon* by restricting its proposal to Presidential speeches, incorrectly arguing that only speech that qualifies as incitement of private violence is outside the scope of a President's lawful duties, and emphasizing the supposedly "narrow" nature of that novel exception. In doing so, DOJ fails to justify its proposed departure from *Nixon* for speech torts. DOJ's new carve out is a *sui generis* rule applied *ex post facto* that has no underlying

5

principle or explanation beyond "we think what President Trump did was bad."  This is not how the rule of law works.

## III.    There is No Need to Remand this Case to the District Court

DOJ suggests that this Court could affirm and remand the case because President Trump has not yet appealed the District Court's ruling not accepting his First Amendment defense.  Of course, because this interlocutory appeal was limited to President Trump's immunity defense, and before DOJ there was no suggestion that Presidential immunity should be coextensive with the First Amendment, President Trump could not have raised the issue on appeal.[1]  Remanding this case would serve only to delay.

The sole issue under *Brandenburg* is President Trump's speech on January 6th. *Thompson v. Trump*, 590 F. Supp. 3d 46, 113 (D.D.C. 2022) ("Plaintiffs do not contend that President Trump's words prior to the January 6th Rally Speech (almost entirely through tweets) meets the *Brandenburg* incitement exception.  They focus on the Rally Speech.").  President Trump's January 6th speech is already in the record as is the District Court's opinion not accepting President Trump's First Amendment defense.  *Thompson*, 590 F. Supp. 3d at 113–18 (D.D.C. 2022).  The

---

[1] Tellingly, Appellees also appear not to have advocated for DOJ's position.  *See generally* Oral Argument Transcript at 66:15-16, *Blassingame v. Trump*, Case No. 22-5069 (D.C. Cir. Dec. 7, 2022) (Sellers: "I don't think the *Brandenburg* standard governs here.").

6

chance that the District Court will reach a different conclusion if the defense at issue is Presidential immunity as a derivative of the First Amendment as opposed to the First Amendment directly is effectively zero.  Under such circumstances, no remand is required.  *See, e.g.*, *Easley v. Cromartie*, 532 U.S. 234, 257 (2001) (finding clear error and reversing without remand because "we do not believe that providing appellees a further opportunity to make their…arguments in the District Court could change the result").[2]

Needlessly subjecting Appellant to the judicial yo-yo treatment that DOJ suggests disregards immunity's role in protecting against not just liability but also litigation.  If this Court believes further briefing desirable, it can direct the parties accordingly.

---

[2] The argument against remand is stronger here.  Unlike in *Easley*, where the standard of review was clear error, this court must review the protected status of President Trump's speech *de novo* under the Constitutional Facts Doctrine. *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 583 U.S. __, 138 S. Ct. 960, 967 n. 4 (2018) ("In the constitutional realm….we have often held that the role of appellate courts 'in marking out the limits of a standard through the process of case-by-case adjudication' favors *de novo* review even when answering a mixed question primarily involves plunging into a factual record." (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 503 (1984)); *Bose Corp.*, 466 U.S. at 508 n. 27 ("The simple fact is that First Amendment questions of 'constitutional fact' compel this Court's *de novo* review.") (internal citations omitted).

## IV.    President Trump's Speech Is Protected Under *Brandenburg*

"[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)) (quotation marks omitted).  Moreover, "[t]he arguably 'inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.'"  *Id*. at 453 (quoting *Rankin v. McPherson*, 483 U.S. 378, 387 (1987)). And, "[w]here the First Amendment is implicated, the tie goes to the speaker." *Fed. Election Comm'n v. Wisc. Right to Life*, 551 U.S. 449, 474 (2007).

As the Sixth Circuit has summarized, "[t]he *Brandenburg* test precludes speech from being sanctioned as incitement to riot unless (1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence of lawless action, and (3) the imminent use of violence or lawless action is the likely result of his speech." *Nwanguma v. Trump*, 903 F.3d 604, 609 (6th Cir. 2018) (quoting *Bible Believers v. Wayne Cty.*, 805 F.3d 228, 246 (6th Cir. 2015) (en banc)).

President Trump's speech is constitutionally protected.  First, there is nothing in the speech explicitly encouraging violence or lawless action.  *See Thompson*, 590 F. Supp. 3d at 115 ("The President's words on January 6th did not explicitly encourage the imminent use of violence or lawless action.").  Rather, President

8

Trump explicitly advocated non-violence, stating "I know that everyone here will soon be marching over to the Capitol building to ***peacefully and patriotically*** make your voices heard."

Second, President Trump's speech did not implicitly encourage the use of violence or lawless action. The District Court erred in pointing to phrases such as "fight like hell. And if you don't fight like hell, you're not going to have a country anymore" to suggest that President Trump was "plausibly" encouraging his supporters to literally "fight." *Id.* ("[T]he court concludes that the President's statements that, "[W]e fight. We fight like hell and if you don't fight like hell, you're not going to have a country anymore," and "[W]e're going to try to and give [weak Republicans] the kind of pride and boldness that they need to take back our country," immediately before exhorting rally-goers to "walk down Pennsylvania Avenue," are plausibly words of incitement not protected by the First Amendment.").

In *Hess v. Indiana*, the Court found that stating "[w]e'll take the f[***]ing streets later (or again)" while standing in front of a crowd of antiwar demonstrators after a number of demonstrators had just been forcibly removed from the street was protected speech. 414 U.S. 105, 107 (1973). Similarly, in *Nwanguma*, the Court found that exhorting a crowd to "get 'em out of here" several times in reference to a protestor at a political rally was neither an explicit nor implicit exhortation to violence, particularly when coupled with the admonition "don't hurt 'em."

9

*Nwanguma*, 903 F.3d at 611–12.  President Trump's actual words on January 6th are less inflammatory than those at issue in *Hess* or *Nwanguma*, and do not qualify as "implicit" incitement. *See generally* Oral Argument Transcript at 66:1-5, *Blassingame v. Trump*, Case No. 22-5069 (D.C. Cir. Dec. 7, 2022) (Katsas, J.: "[*Nwanguma]* seems to stand for the proposition that if the words themselves are not very inciting, and the primary danger comes from the powder keg, that's not enough to eliminate first amendment protection under *Brandenburg*.")

The District Court's contention also ignores the full textual context of President Trump's words. President Trump's use of the word "fight" was clearly metaphorical, referring to a political "fight," not a literal fistfight or other violent interaction.  For example, he stated, in reference to Rudy Giuliani, "He's got guts. He fights, he fights."  No reasonable listener would understand that metaphorical statement to suggest that Mr. Giuliani, a 76-year-old man, is getting into fist fights. Similarly, President Trump referred to Jim Jordan and other Congressmen, stating "they're out there fighting.  The House guys are fighting."  Rep. Jordan is no Preston Brooks, he is not caning people on the House floor; his "fight" is political.  In reference to the press, President Trump stated "it used to be that they'd argue with me. I'd fight. So I'd fight, they'd fight, I'd fight, they'd fight. Pop pop. You'd believe me, you'd believe them. Somebody comes out. You know, they had their point of view, I had my point of view, but you'd have an argument."  This refers to verbal

10

sparring.  Whatever their differences may be, no one has plausibly claimed that President Trump and his antagonists in the press have come to physical blows.  When read in context, President Trump's exhortation to "fight" is unambiguously a reference to applying political pressure, not engaging in illegal or violent activity, even absent his exhortation to the crowd to proceed "peacefully."

Ironically, the District Court implicitly recognizes that references to "combat" are metaphorical in evaluating speech by Rudolph Giuliani.  Mr. Giuliani stated in his speech, on the same day and stage as President Trump's Rally Speech, "Let's have trial by combat" in "the context of his assertion that the election was rife with criminal fraud."  *Thompson*, 590 F. Supp. 3d at 118.  The District Court concluded that Mr. Giuliani's speech was "surely provocative, but it is not unprotected speech." *Id.*  This holding is irreconcilable with the District Court's ruling on President Trump's speech.

The District Court attempts to distinguish Mr. Giuliani's speech from President Trump's by claiming that Mr. Giuliani did not suggest where this "trial by combat" would occur, while President Trump suggested walking to the Capitol. *Thompson*, 590 F. Supp. 3d at 118.  Location is a thin reed that cannot support the weight the District Court places on it.  It also ignores what President Trump actually said about walking to the Capitol: "to peacefully and patriotically make your voices

11

heard" and "try to give our Republicans…the kind of pride and boldness that they need to take back our country."[3]

There is no implicit or explicit exhortation to violence in President Trump's speech.  *See generally* Oral Argument Transcript at 64:5-7, *Blassingame v. Trump*, Case No. 22-5069 (D.C. Cir. Dec. 7, 2022) (Katsas, J.: "[Y]ou just print out the speech, which I have done, and read the words on the page, it doesn't look like it would satisfy the [*Brandenburg*] standard, right?"); *Id.* at 74:21-25 (Rogers, J.: "You acknowledge I think that the statement, the actual words used by the President, are not what the crowd actually did.  In other words, the President didn't say break in, didn't say assault members of Congress, assault Capitol Police, or anything like that.").  The plain language of President Trump's speech was not "incitement" under *Brandenburg*.

What is more, the District Court's "plausibility" analysis simply underscores that even if one could conclude that President Trump's speech might "plausibly" be alleged to have fallen on the wrong side of a *Brandenburg*-like test, that would be no reason to deny President Trump immunity.  It is well-settled that even qualified immunity—by definition lesser than the absolute immunity at issue here—"protects government officials 'from liability for civil damages insofar as their conduct does

---

[3] For that matter, it also ignores President Trump's later statements that day exhorting the crowd to "Stay peaceful" and "remain peaceful."

not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be sufficiently clearly established that immunity will not apply, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added).

Where, as here, the question whether President Trump's speech crossed the *Brandenburg* line is, at worst, a *debatable* proposition, it would make no sense to hold that absolute Presidential immunity does not apply given that qualified immunity—a lesser immunity—would. An immunity rule whose application turns on at worst a *debatable post hoc* determination under *Brandenburg* cannot be reconciled with *Nixon.*

## CONCLUSION

President Trump's speech falls within the perimeter of his duties as President. This Court should reject the DOJ's test as contrary to *Nixon* and determine that President Trump is entitled to Presidential immunity in this suit.

Dated: March 23, 2023                Respectfully submitted,

                                     */s/* Jesse R. Binnall
                                     Jesse R. Binnall
                                     Molly McCann

BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
molly@binnall.com
*Attorneys for Donald J. Trump*

David A. Warrington
Jonathan M. Shaw
Gary M. Lawkowski
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 402
Alexandria, Virginia 22314
Tel: (703) 574-1206
Fax: (415) 520-6593
dwarrington@dhillonlaw.com
jshaw@dhllonlaw.com
glawkowski@dhillonlaw.com

14

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this Reply Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1) because, excluding the parts of the Reply Brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), it contains 2,988 words.

Undersigned counsel certifies that this Reply Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century font.

Dated: March 23, 2023                    Respectfully submitted,

                                         */s/* Jesse R. Binnall
                                         Jesse R. Binnall
                                         *Attorney for Donald J. Trump*

15

## CERTIFICATE OF FILING AND SERVICE

I certify that on March 23, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall
*Attorney for Donald J. Trump*